DYK, Circuit Judge.
Appellants Jeffrey and Claudia Griffin (“the Griffins”) appeal from a judgment of the United States District Court for the Central District of California. The district court granted summary judgment, finding the Griffins’ United States Patent No. 5,154,448 (“the 448 patent”) invalid under 35 U.S.C. § 102(b) as anticipated. Marrin v. Griffin, Nos. CV07-239-GW and CV072100-GW, 2008 WL 4184643, at *1, 2008 U.S. Dist. LEXIS 79708, at *1-2 (C.D.Cal. Sept. 4, 2008).
On appeal, the Griffins’ primary contention is that the trial court improperly failed to treat the “for permitting” language in the preamble as a claim limitation. We affirm.
BACKGROUND
In July of 1990, Jeffrey and Claudia Griffin conceived of the idea of using a scratch-off label to mark beverage containers and cups so that attendees of a gathering or party could keep track of their beverage cups. The Griffins filed a patent application in April 1991, and the '448 patent, entitled “Scratch-Off Marking Label,” issued on October 13, 1992. Claim 1 of the patent, which is representative of the four disputed claims, reads as follows:
1. A scratch-off label for permitting a user to write thereon without the use of a marking implement, comprising:
a permanent base having a colored near side which is normally visible to the user and having a far side; and
a coating of scratch-off non-transparent material having a color which contrasts with the color of the near side of the permanent base, which coating is applied directly onto the near side of the permanent base with sufficient thickness so as to obscure the color of the permanent base, and which when scratched off reveals the color of the near side of the permanent base.
'448 patent col. 4 11. 35^48. The first two lines of Claim 1 comprise its preamble. Figure 1 of the '448 patent, which illustrates a beer can embodiment of the asserted invention, is reproduced below.
*1293 [[Image here]]
Michael Marrin formed a company, Upardi, Inc. (“Upardi”), to manufacture the labels, and containers with the labels, with the objective of securing a license from the Griffins for the '448 patent. On June 5, 2002, the Griffins entered into a license agreement with Upardi. The relationship between Michael Marrin and the Griffins broke down swiftly, due primarily to differences in opinion about the appropriate payment obligations under the license. On April 11, 2006, the Griffins notified Michael Marrin that the license was terminated. In January 2007, Michael Marrin and Etch-It, Inc., a company Michael Marrin had created to market and sell scratch-off labels, filed an action for declaratory relief against the Griffins in the United States District Court for the Central District of California seeking a determination, inter alia, that the Griffins '448 patent was invalid. Then, in March 2007, the Griffins filed suit against Michael Marrin, Heidi Marrin, and Etch-It, Inc. (collectively “Marrin”) in state court, alleging that Marrin was willfully infringing the '448 patent. Marrin removed the Griffins’ action from the state court to the California district court, and the two actions were consolidated.
On cross-motions for summary judgment, the district court ruled that the '448 patent was invalid as anticipated, and therefore was not infringed by Marrin. Marrin, 2008 WL 4184643, at *1, 2008 U.S. Dist. LEXIS, at *1-2. In reaching this conclusion, the district court noted that the Griffins’ “only basis for arguing against anticipation is that the preamble language is an additional limitation.” Id., 2008 WL 4184643, at *3, 2008 U.S. Dist. LEXIS, at *7. Based on its finding that the “preamble language is not limiting,” the district court concluded that “a person of ordinary skill in the art at the time of the invention would find that the limitations of the body of the claims of the '448 patent are anticipated by one or more of’ eight patents on scratch-off devices: U.S. Patent Nos. 4,241,943 (“the Malinovitz patent”); 4,637,635 (“the Levine patent”); 2,523,650 (“the Dickson patent”); 4,095,824 (“the Bachman patent”); 4,508,513 (“the Donovan patent”); 4,900,617 (“the Smith patent”); 4,299,637 (“the Oberdeck patent”); and 4,536,218 (“the Gamho patent”). Id., 2008 WL 4184643, at *3, 2008 U.S. Dist. LEXIS, at *5, 7. None of these eight patents was cited during the prosecution of the '448 patent.
The Griffins timely appealed, and we have jurisdiction under 28 U.S.C. § 1295. Because this appeal is from a grant of summary judgment, we review the district court’s determination de novo and view the record in the light most favorable to the non-moving party (here the Griffins). See OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1402 (Fed. Cir.1997). Anticipation is a question of fact. Akzo N.V. v. U.S. Int’l Trade Comm’n, 808 F.2d 1471, 1479 (Fed.Cir. 1986).
DISCUSSION
The Griffins’ main argument on appeal is that the preamble’s “for permit *1294 ting” language should have been construed as a limitation on the scope of the claims and that the asserted prior art therefore does not anticipate. The Griffins acknowledge that the prior art disclosed scratch-off devices. However, the Griffins contend that the prior art did not disclose the ability of a user of a scratch-off device to write without the use of a marking implement, which was disclosed in the preamble to the claims of the '448 patent. The district court ruled that the “for permitting” language in the preamble was not a claim limitation based on its findings that (1) the preamble language added in the amendment only added a statement of a purpose or an intended use for the invention, and (2) the patentee did not demonstrate clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art. Marrin, 2008 WL 4184643, at *3, 2008 U.S. Dist. LEXIS, at 2008 U.S. Dist. LEXIS, at *2, 7. We agree.
 The preamble language indicates that the intended use of the scratch-off labels was “for permitting a user to write thereon without the use of a marking implement.” '448 patent col. 4 11. 35-36. But use descriptions such as this are rarely treated as claim limitations. As we said in Bicon, Inc. v. Straumann Co., “[p]reamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim.” 441 F.3d 945, 952 (Fed.Cir.2006). For apparatus claims, such as those in the 448 patent, generally patentability “depends on the claimed structure, not on the use or purpose of that structure.” Catalina Marketing Int’l v. Coolsavings.com, Inc., 289 F.3d 801, 809 (Fed.Cir.2002). Here, the preamble language only added an intended use, namely, that the scratch-off layer may be used for writing.
Clear reliance on a preamble during prosecution can distinguish a claimed invention from the prior art and render the preamble a claim limitation, id. at 808, but there was no such reliance here. The prosecution history establishes that the Griffins did not consider the writing use for their claimed invention as being patent-ably significant. The Griffins state that, as filed, the original patent application included the following language for claim 1:
1. A scratch off marking label, comprising:
(a) a layer of scratch off non-transparent coating, and;
(b) a permanent base layer of such color so as to contrast with said scratch off coating;
(c) said scratch off coating being applied directly onto said permanent layer of contrasting color, whereby upon scratching through of said scratch off coating reveals the contrasting color of said permanent layer in legible lines, thereby providing a writing means whereby a person can mark on the label without the need for a writing implement.
Appellants’ Br. 9 (emphasis added). In revising this claim to its current form during prosecution, the Griffins explained to the examiner that “ ‘writing means’ is not an element of Applicant’s claims, and does not appear in the new claims.” J.A. 71 (Jeffrey A. Griffin, Amendment After Notice of Allowance (Nov. 28, 1991)). Because the Griffins expressly attested that the “writing means” language was not a claim limitation, they cannot now assert that it was such a limitation. Thus, we agree with the district court and hold that the preamble’s statement of purpose does not limit the scope of the claims.
The dissent suggests that the presumption against reading a statement of *1295 purpose in the preamble as a claim limitation is inapplicable because the body of the claim makes no sense without the preamble’s reference to a “label.” But that was also true in a number of the cases in which we held that the statement of purpose in the preamble was not a claim limitation. In other words, the mere fact that a structural term in the preamble is part of the claim does not mean that the preamble’s statement of purpose or other description is also part of the claim. For example, in Catalina Marketing, the preamble’s reference to a “system” was obviously part of the claims; the court held that the type of system described in the preamble was not a claim limitation. 289 F.3d at 810. In Intirtool, Ltd. v. Texar Corp., the preamble’s reference to “hand-held punch pliers” was clearly part of the claim; again the court held that the preamble’s description of a purpose for the pliers was not part of the claim. 369 F.3d 1289, 1296 (Fed.Cir. 2004). Similarly, in Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., the preamble’s references to a “weaving machine” were obviously part of the claims, whereas the preamble’s indication of reference points to fix the direction of movement of woven fabric from the machine was held not to be a claim limitation. 944 F.2d 870, 880 (Fed.Cir.1991).
The Griffins also now argue that the asserted prior art fails to anticipate additional limitations from the body of the claims — namely, that the patented device includes a scratch-off coating that contrasts with the color of the device’s permanent base. The law of anticipation is clear: “A prior art reference anticipates a patent claim if the reference discloses, either expressly or inherently, all of the limitations of the claim.” Finnigan Corp. v. Int’l Trade Comm’n, 180 F.3d 1354, 1365 (Fed. Cir.1999). We agree with the district court that all of the limitations present in the claims of the '448 patent were present in the prior art references. In particular, the Malinovitz patent taught scratch-off technologies for parking cards. The side-by-side comparison below of the prior art Malinovitz patent and the Griffins patent is sufficient to demonstrate that the Griffins patent does not include any limitations that were not in the Malinovitz patent.
[[Image here]]
Thus, we reject the Griffins’ argument that the asserted prior art fails to disclose additional limitations present in the body of the claims of the Griffins patent.
Beyond their anticipation arguments, the Griffins contend that the district court should have ruled on the issue of infringement, notwithstanding its finding that the asserted claims were invalid. This argument lacks merit. There can be no infringement of claims deemed to be invalid. Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc., 127 F.3d 1065, 1069-70 (Fed. Cir.1997).
*1296 Accordingly, we affirm the district court judgment of invalidity and non-infringement.

AFFIRMED

COSTS
No costs.